UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| KENNETH PRIVETTE, | § | |
| Individually and on behalf | § | |
| of all others similarly situated, | § | Civil Action No. 2:19-cv-3221-DCN |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| WASTE PRO OF NORTH CAROLINA, INC., | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
TO CONDITIONALLY CERTIFY COLLECTIVE ACTION AND
FACILITATE NOTICE TO POTENTIAL CLASS MEMBERS**

Defendant WASTE PRO OF NORTH CAROLINA, INC. ("Waste Pro NC"), hereby

responds in opposition to Plaintiff's Motion to Conditionally Certify Collective Action and

Facilitate Notice to Potential Class Members and Incorporated Memorandum of Law ("Motion for

Conditional Certification") filed by Plaintiff, KENNETH PRIVETTE (Doc. 5), as follows:

**I.    INTRODUCTION.**

Plaintiff provides sparse evidence that does not meet even the modest burden for

conditional certification of a collective of the undefined "Waste Disposal Drivers" throughout

North Carolina.  To be sure, Plaintiff submits four (4) general and conclusory declarations that

only speak to a time period prior to July 19, 2018, at a single facility in North Carolina.  The

declarations are all fatally flawed because they do not specify the type of driver, nor do they speak

to the various FLSA violations in the Fourth Amended Complaint.  While Plaintiff's burden is not

a hefty one at this stage, he still has a burden which he has not met.  Consequently, the Motion for

Conditional Certification should be denied.[1]

## II.     PERTINENT FACTUAL BACKGROUND.

### A.     The Four (4) Declarations Are Limited in Period of Time, and Location and Do Not Sufficiently Inform that Conditional Certification of a Common Policy to Violate the FLSA for the Requested Collective is Appropriate.

Plaintiff submitted four (4) declarations in support of his Motion for Conditional Certification. [*See* Doc. 6-2.]  All the declarants worked at a single facility of Defendant in Concord, attest to a time period that does not establish any facts after July 19, 2018, and do not define their positions such that they meet Plaintiff's burden.[2]  All consents filed by the Opt-In Plaintiffs (*See Daniel Hansen v. Waste Pro of South Carolina*, Case No: 2:17-cv-02654-DCN ("*Hansen*") Doc. 30-5, 35-1 at p. 8, 35-1 at p. 10, Doc. 35-1 at p. 14, 35-1 at p. 38, Doc. 35-1 at p. 54, 35-1 at p. 63, Doc. 35-1 at p. 65, Doc. 35-1 at p. 70, Doc. 35-1 at p. 71, and 132-1) do not identify what type of waste disposal driver they are, nor specify what facility or when they worked.

The first is the Declaration of Jared Brawley. [Doc. 6-2 at p. 16.]  Mr. Brawley worked at the Concord location of Defendant as an undefined "Waste Disposal Driver," but does not aver as to the type of driver he was (i.e., residential, commercial front load, roll off, swing, container delivery, portables, lead or route supervisor).  [*Id*. at ¶¶ 3-4.]  He started his employment at some point in 2015 and ceased his employment at some point in 2017.  [*Id*. at ¶ 4.]  He claims that he was originally told his day rate was intended to compensate for eight (8) hours work, then later was told it was intended to cover ten (10) hours of work. [*Id*. at ¶ 8.]  However, he was never told that he had to work a certain period of time to be eligible for payment of his day rate.  The only

---

[1]     The Fourth Amended Complaint also refers broadly to the undefined "Waste Disposal Drivers," despite there being varying compensation methods amongst different types of drivers in North Carolina.

[2]     Plaintiff merely refers to the undefined "Waste Disposal Drivers" throughout his Motion to Conditionally Certify and supporting Declarations.

stated basis for a claim by him is that as a day rate employee, he was only compensated an overtime premium at one half of his regular rate, not one and one half times his regular rate. [*Id*. at ¶ 18.] He does not complain that: (a) he was ever paid less than his less than his day rate, (b) he had to perform work either before or after being clocked in, (c) he ever received other compensation in addition to his day rate, or (d) he had deductions for lunch breaks that he did not take.

The second is the Declaration of Kumar Collins, which was executed on June 26, 2018. [Doc. 6-2 at p. 19.] As of the date of his Declaration, Mr. Collins had only worked at the Concord location of Defendant as a "Waste Disposal Driver," but does not aver as to the type of driver he was (i.e., residential, commercial front load, roll off, swing, container delivery, portables, lead or route supervisor). [*Id*. at ¶¶ 3, 4.] He states that he was told he was not eligible for his day rate unless he worked an undefined "certain number of hours during the day," but does not allege that he did not receive his day rate on any day he worked. [*Id*. at ¶ 9.] The main basis for his claim is that as a day rate employee, he was only compensated an overtime premium at half of his regular rate, not one and a half his regular rate. [*Id*. at ¶ 15.] He also complains that he was required to work after his route was complete for "help" pay that he often was not paid. [*Id*. at ¶ 15.] He does not complain that: (a) he was ever paid less than his less than his day rate, (b) he had to perform work either before or after being clocked in, or (c) lunch breaks that he did not have were automatically deducted.

The third is the Declaration of Kenneth Privette. [Doc. 6-2 at p. 22.] Mr. Privette, the only named Plaintiff, states that he had worked at the Concord location of Defendant until November 2016 as an undefined "Waste Disposal Driver," but does not indicate the type of driver he was (i.e., residential, commercial front load, roll off, swing, container delivery, portables, lead or route supervisor). [*Id*. at ¶¶ 4, 5.] He stated he occasionally worked at the Indian Trail location of

Defendant without, again, indicating what type of driver he was on those occasions or how he was paid. [*Id*. at ¶ 5.]   He is the only declarant that avers that he was told he was not eligible to earn a day rate unless he worked at least six (6) hours, but does not allege that he did not receive his full day rate on any day he worked less than six (6) hours or how he was paid if he did not work six (6) hours. [*Id*. at ¶ 12.]  The main basis for Plaintiff's claim is that, as a day rate employee, he was only compensated an overtime premium at half of his regular rate, not one and a half times his regular rate. [*Id*. at ¶¶ 14-15, 18.]  He does not complain that: (a) he was ever paid less than his less than his day rate, (b) he had to perform work either before or after being clocked in, or (c) lunch breaks that he did not take were automatically deducted, or (d) received other forms of compensation in addition to his day rate.

The fourth is the Declaration of Ernie Webb, which was executed on July 19, 2018. [Doc. 6-2 at p. 25.]  As of the date of his Declaration, Mr. Webb states that he had worked only at the Concord location of Defendant as an undefined "Waste Disposal Driver," without indicating the type of driver he was (i.e., residential, commercial front load, roll off, swing, container delivery, portables, lead or route supervisor).  [*Id*. at ¶¶ 3, 4.]  He states that he was told he was not eligible for his day rate unless he worked an undefined "certain number of hours during the day," but does not allege that he did not receive his day rate on any day he worked.  [*Id*. at ¶ 12.]  The main basis for his claim is that as a day rate employee, he was only compensated with an overtime premium at half of his regular rate, not one and a half times his regular rate. [*Id*. at ¶¶ 14-15, 18.]  Although not a claimed violation in the Motion to Conditionally Certify, he also complains that he was required to work after his route was completes for "help" pay that he often was not paid. [*Id*. at ¶ 15.] He does not complain that: (a) he was ever paid less than his less than his day rate, (b) he had to perform work either before or after being clocked in, or (c) lunch breaks that he did not have

were automatically deducted.

### B. Defendant's Single Declaration Reveals the Lack of a Common Policy to Violate the FLSA Amongst the Proposed Collective.

At the time Plaintiff originally moved for conditional certification of a nationwide collective, Defendants submitted a Declaration of Ralph Gingles. [*See Hansen* Doc. 104-6.][3] Mr. Gingles is a Divisional Vice President for Defendant, generally supervising the operations at Charlotte South, Concord and Ashville. [*Id.* at ¶ 1.] Mr. Gingles avers that he performs the Division Manager functions at Concord, but he has Division Managers in Charlotte and Ashville that report to him. [*Id.* at ¶ 2.]

Importantly, Mr. Gingles declares that there are different types of drivers: residential drivers, commercial front load drivers, roll off drivers, swing drivers, container delivery drivers, portables drivers, lead drivers, and route supervisors (who may drive pick-up trucks or drive a route in in trash hauler, depending on the particular day). [*Id.* at ¶ 3.] As to the compensation of drivers, Mr. Gingles attests that depending on the type of driver, the compensation can vary between hourly, salary, or day or job rate. [*Id.* at ¶ 4.]

As to the issue of receiving additional compensation for assisting others after a driver's route is complete, Mr. Gingles indicates that certain driver positions are never eligible for such compensation. [*Id.* at ¶ 6.] Additionally, he states that the decision to offer or pay additional compensation is vested solely with the Division Manager at each location. [*Id.* at ¶ 5.]

---

[3] Even though Plaintiff has nearly a year and a half to supplement his evidence supporting conditional certification with the knowledge of the differences in pay practices amongst the various types of drivers across North Carolina, Plaintiff rests on his 2018 declarations. To the extent Plaintiff attempts to supplement his evidence in his Reply, this Court should not consider further evidence in a Reply.

III.    **PLAINTIFFS HAVE FAILED TO MEET EVEN THE LOWER BURDEN FOR COLLECTIVE CERTIFICATION.**

Section 216(b) of the FLSA sets forth the standard for class certification and provides that "[a]n action . . . may be maintained against any employer in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."    Although the Fourth Circuit has not directly addressed the appropriate standard for certifying a collective action under §216(b), district courts in this circuit generally engage in a two-step process to determine whether the plaintiff and potential opt-ins are similarly situated and may proceed to trial collectively.  *See Curtis v. Time Warner Entertainment-Advance/Newhouse P'ship,* 2013 U.S. Dist. LEXIS 63603, at *6 (D.S.C. May 3, 2013).

At the first stage, commonly referred to as the "notice stage," the court reviews the pleadings and affidavits to determine whether the plaintiff has demonstrated that the proposed class members are "similarly situated" and that notice is "appropriate."  *See Gordon v. TBC Retail Group, Inc.,* 134 F. Supp. 3d 1027, 1031 (D.S.C. Sept. 30, 2015). This Court has described the requirement as demonstrating "some identifiable factual nexus which binds the named plaintiffs and the potential class members together." *MacGregor v. Farmers Ins. Exchange*, 2011 U.S. Dist. LEXIS 80361, *6 (D.S.C. July 22, 2011) (citing *Heagney v. Eur. Am. Bank*, 122 F.R.D. 125, 127 (4th Cir. 1988)).  Whether Plaintiff and the collective members "were victims of a common policy or plan that violated the law" is a key factor in determining whether conditional certification is appropriate.  *Pelczynski v. Orange County Club, Inc.*, 284 F.R.D. 364, 368 (D.S.C. July 12, 2012).

Although Plaintiff's burden has been described as "fairly lenient" at this stage, he still bears some burden of demonstrating that notice is appropriate. *See MacGregor*, 2011 U.S. Dist. LEXIS 80361 at *3 (citing *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. Oct. 12, 1995)). "Notice is 'appropriate' where the proposed class members' claims 'share common underlying

facts and do not require substantial individualized determinations for each class member.'" *See*

*Gordon,* 134 F. Supp. 3d at 1031 (citing *MacGregor*, 2012 U.S. Dist. LEXIS 100754 at *2). Mere

allegations will not suffice to make a proper showing; instead, some factual evidence is necessary.

*MacGregor*, 2011 U.S. Dist. LEXIS 80361, *6 (citing *Bernard v. Household Int'l, Inc.*, 231 F.

Supp. 2d 433, 435 (E.D. Va. Nov. 21, 2002)).

As this Court explained in *MacGregor*, plaintiffs "should provide at least 'modest factual

support' to show that class certification is likely to promote more 'orderly' and 'sensible' case

management than separate adjudication." *Id*. at 6-7. Plaintiff has not provided such support. As a

result, certification is not warranted, even at this initial stage.[4]

### A.    Plaintiff Has Failed to Show that Others Are Similarly Situated Regarding Any Alleged FLSA Violation.

In his Fourth Amended Complaint (Doc. 4), Plaintiff alleges that Waste Pro NC violated

the FLSA in four (4) ways: (1) by not paying "a true day rate for any and any and all hours worked

in a given day, but [instead] placed limitations on the number of hours worked before the day rate

was paid; (2) by coupling the day rate with "other forms of compensation"; (3) by encouraging

Plaintiff and the Putative Class Members to "perform pre-shift and post-shift duties while not

clocked in"; and (4) by "automatically deduct[ing] thirty (30) minutes for lunch breaks during

which Defendant knew Plaintiff and other similarly situated waste disposal drivers, regularly

performed work." [Doc. 4, ¶¶ 2-3.]

---

[4]    While Plaintiff cites to this Court's decision in *Turner v. BFI Waste Services, LLC*, 268 F.
Supp. 3d 831 (D.S.C. 2017), in support of conditional certification (Doc. 5 at pp. 5-7), this Court
did note in granting conditional certification that the Defendant "never argues that [Plaintiff] has
failed to show that he was situated to other divisions in the way [Defendant] calculated his regular
rate of pay." *Id.* at 841.

Plaintiff's Motion for Conditional Certification does not address or even mention three of the alleged violations, namely the payment of "other forms of compensation," the alleged failure to compensate Plaintiff for pre-shift or post-shift duties, or the alleged automatic lunch deductions. Indeed, the Motion to for Conditional Certification only seeks certification of a collective allegedly subjected to the following policy or procedure that violated the FLSA:

> [W]hen Plaintiff worked over forty (40) hours per week, and/or beyond the number of hours that his daily rate of pay is set to cover, Defendant failed, and continues to fail, to compensate the Drivers at a rate that is one and one-half ties their regular rate of pay for their overtime hours worked each week. Instead, Defendant pays, and continues to pay, its Drivers only a half-time rate of pay for their overtime hours worked. Therefore, Defendant has violated and continues to violate, the FLSA by failing to pay its Drivers proper overtime compensation as prescribed by law.

[Doc. 5 at, p. 2.] This allegation is the only common allegation in the four (4) declarations filed in support of the Motion for Condition Certification. [*See* Doc. 6-2, p. 18 at ¶¶ 14 and 17, p. 20 at ¶¶ 12, 13 and 15, p. 24 at ¶¶ 14 -16, and p. 27 at ¶¶ 14 and 17-18.]

This "overtime premium" allegation does not amount to a violation of the FLSA. Indeed, as this Court has previously noted, the FLSA does not require the payment of overtime for day rate employees at an overtime premium at one and one half the regular rate because that "would lead to [the day rate employee] receiving two and one-half times his regular rate for overtime hours." *Turner v. BFI Waste Services, LLC*, 268 F. Supp. 3d 831, 837 (D.S.C. Aug. 7, 2017). There is also no requirement under the FLSA that an employee understand how his overtime is calculated, so the allegations of misunderstanding by the declarants are of no merit.

Moreover, the suggestion by Plaintiff that there was a policy to tell folks "that they were/are not eligible to receive their full 'day rate' unless they work a certain number of hours per work day" is not tantamount to a violation under the FLSA without evidence that couples the statement with a policy to pay less than a full day or job rate when the alleged threshold was not met. *See,*

*e.g., Mendoza v. Mo's Fisherman Exch., Inc.*, 2016 U.S. Dist. LEXIS, 81764, *35 (D. Md. Jun. 22, 2016) ("[T]o be similarly situated, plaintiffs must demonstrate that they were all ***victims*** of a common policy, scheme, or plan that violated the law") (*emphasis added*); *Regan v. City of Charleston, S.C.*, 2014 U.S. Dist. LEXIS 96317, *2 (D.S.C. July 16, 2014) (same)).  What Plaintiff and the declarants were allegedly "advised" is irrelevant, as there is no requirement of a mutual understanding as to how many hours the day rate was intended to cover, as long as in practice, the full day rate was paid regardless of the number of hours worked.  *Cf Turner*, 268 F. Supp. 3d at 837 (D.S.C. Aug. 7, 2017) ("It is unclear that the presence of a mutual agreement regarding daytime hours worked is relevant for calculating the divisor for purposes of calculating the regular rate.").  Without even an example of this purported FLSA violation, as compared to only a discussion of it, there is no common policy to violate the FLSA that has been established to support conditional certification.[5]

So too would this allegation require individualized determinations because each allegation is based upon an oral conversation, not a written policy.  Because of the necessary inquiries as to conversations with the various supervisors, collective treatment is not appropriate.

**B.     Plaintiff Does Not Seek Collective Certification of Any Claims Related to the Payment of Bonuses, Alleged Off-the-Clock Work, and Alleged Automatic Lunch Deductions.**

At this stage, Plaintiff must "make a preliminary factual showing that a similarly situated group of potential plaintiffs exists."  *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771

---

[5]     Even if this Court is satisfied that mere "talk" of a threshold requirement for the day rate is an FLSA violation, there is insufficient evidence that the Waste Disposal Drivers in North Carolina would be similarly situated in this regard.  To be sure, only one declarant provides the number of threshold hours (Doc. 6-2 at p. 23 at ¶ 12), two (2) only generally refer to a "certain" undefined threshold (*Id.* at p. 20 at ¶ 9 and p. 26 at ¶ 12), and the fourth never mentions being told of any threshold of work to be paid a day rate (*Id.* at pp. 16-18).

(D. Md. 2008).  "[M]ere allegations in the complaint would not suffice" to carry this burden.  *Id.* at 772.  Because the Motion for Conditional Certification does not even mention that a "similarly situated group of potential plaintiffs exists" regarding three (3) of the four (4) FLSA allegations referenced in the Fourth Amended Complaint (items 2-4 above), conditional certification is not warranted as to those purported violations.

Plaintiff does not mention the purported FLSA violation of paying "additional compensation" to day rate Waste Disposal Drivers in the Motion for Conditional Certification or his Declaration. [*See* Doc. 6 and Doc 6-2 at pp. 22-24.]  However, two (2) declarants, Kumar Collins and Ernie Webb, reference having to work after completing a route for "help pay."  In addition to not being mentioned in the Motion for Conditional Certification, those allegations are insufficient to conditionally certify a collective across North Carolina for all Waste Disposal Drivers because Plaintiff has not made a showing that he is "similarly situated" with regard to this purported claim.

While the declarants simply call themselves "Waste Pro Disposal Drivers," Ralph Gingles identified the numerous types of drivers throughout three (3) divisions in North Carolina.  [*Hansen* Doc 104-6 at ¶¶ 3-4]  He averred that the decision is left to the Division Managers as to whether to pay additional compensation for assisting others and that certain driver positions are not eligible for it under any circumstance. [*See Id.* Doc. 104-6 at ¶¶ 5-6.]  Because Plaintiff's "help pay" claim would turn on particular decisions and policies of individual Division Managers and individualized determinations of the driver position held, collective treatment is inappropriate.  *See MacGregor*, 2011 U.S. Dist. LEXIS at *3 ("When alleged FLSA violations stem from the enforcement decisions of individual supervisors, without a company-wide policy or plan directing those enforcement decisions, collective treatment is not appropriate."); *Blaney v. Charlotte-*

*Mecklenburg Hosp. Auth.*, 2011 U.S. Dist. LEXIS 105302, *7 (W.D.N.C. Sept. 16, 2011) (refusing to certify a class where there was "wide variance" in job conditions and where the defendant "presented significant evidence that in order to resolve the claims of each plaintiff, individualized determinations as to whether the FLSA requirements were violated will be necessary."). These individualizes determinations as to local decisions and qualifying driver positions will predominate and render collective treatment inappropriate.

### C.    Plaintiff Fails to Provide Evidence of a Company-Wide Policy or Show that the Plaintiff is Similarly Situated with Drivers Throughout North Carolina.

Plaintiff's proposed collective would include individuals who worked in Defendant's divisions other than Concord. This broad statewide collective is requested despite Plaintiff and the other declarants only having worked in the Concord Division. Importantly, Plaintiff provides no evidence of the pay practices at locations other that Concord.[6] Plaintiff has therefore failed to show that the various Waste Disposal Drivers who worked in divisions other than Concord would be "similarly situated." *See, e.g., Mullis v. Wings Over Spartanburg, LLC*, 2017 WL 749362 (D.S.C. Feb. 27, 2017).

In *Mullis*, the plaintiff sought to conditionally certify a class that included all individuals who worked as a Wild Wing Café bartender in 12 locations in South Carolina and North Carolina. *See Id.* at *2. The plaintiff, however, only offered declarations from bartenders who worked in two (2) out of the 12 locations: Spartanburg and The Vista. *Id.* The Court conditionally certified a collective only regarding the two (2) locations for which the plaintiff submitted declarations, and found that "there is no evidence whatsoever that the other 10 Wild Wing restaurants also use a similar tip-pool system," which was the practice challenged by the plaintiff. *See Id.* at *3. The

---

[6]    Although Plaintiff casually mentions occasionally working for Defendant at Indian Trail (Doc. 6-2 at p. 22 at ¶ 5), he does not speak to any pay practices at that location.

11

*Mullis* court further noted that "because Plaintiff never worked at those ten (10) restaurants, it is doubtful that he would have standing to sue those entities even if he had produced evidence that they all required bartenders to share tips with expeditors." *Id.* (citing *Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 416 (D. Md. Sept. 6, 2013).

As in *Mullis*, Plaintiff has only submitted evidence regarding one of Waste Pro NC's locations, and he presents nothing regarding the other divisions, which Ralph Gingles averred are autonomous as to pay practices. As such, there is no basis for the Court to conclude that Waste Disposal Drivers from Concord are similarly situated to those who worked in other locations where Defendant operated. *See id.*; *see also McCoy v. RP, Inc.,* 2015 U.S. Dist. LEXIS 142521, *12-13 (D.S.C. Oct. 19 2015) (finding it appropriate to limit the plaintiff's proposed class to servers from one of the defendant employer's locations where the plaintiff's affidavit lacked sufficient evidence regarding other locations).

Moreover, because Plaintiff's claim is premised on what he was "told" at the Concord division, there is no evidence to support a finding that Waste Disposal Drivers who worked at different locations were told something similar. *See, e.g., Bernard v. Household Intern, Inc.*, 231 F. Supp. 2d 433 (E.D. Va. Nov. 21, 2002) (finding that declarations attesting to knowledge of locations where the declarant did not work – based on alleged conversations with employees in those offices – were insufficient to establish the "similarly situated" requirement for other locations, especially where the declarations -provided "no names of employees or supervisors."). Because Plaintiff has provided no evidence of a company-wide policy for Waste Pro NC, any conditional certification, if any, should be limited to Defendant's Concord Division.

### D.    Given the Lacking Evidence, the Collective Period, If Any, Should Be Limited.

Plaintiff seeks conditional certification of a collective of all Waste Disposal Drivers and

argues that "notice should go to all individuals who were employed by Defendant during the three-year period preceding the Court's ruling on the instant Motion for Conditional Certification. [Doc. 5 at p. 25 (internal citations omitted) and 26 at Prayer for Relief (i).]   Despite his legal argument and Prayer for Relief, Plaintiff's proposed Notice suggests the collective should include individuals who were employed three (3) years prior to the filing of the original Complaint [*Id.* at Exhibit "A"], Given this contradiction, this Court should decline the invitation to include the dates in the Notice and instead utilize the date set forth in the argument section of the Motion (*Id*. at p. 25 and 26 at Prayer for Relief (i)). *See*, *Sellers v. Keller Unlimited LLC*, 2018 WL 4502183 at n. 2 (D.S.C. Sept. 20, 2018).  This would allow for the beginning of the collective period to be three (3) years prior to any ruling.

As to the end of the collective period, it should not be to the present, as requested by Plaintiff.  Plaintiff last worked for Waste Pro NC more than three (3) years ago, in November 2016 (Doc. 6-2, at p. 22, ¶ 4), and the latest date of any declaration supporting certification is July 19, 2018, the date of the Declaration of Ernie Webb. [*Id*. at p. 28.]   Despite that last fact stemming from the period was before July 19, 2018, Plaintiff improvidently seeks to certify a class of all Waste Disposal Drivers who worked or work for Waste Pro NC to the present.  [Doc. 5.]

Plaintiff offers no evidence that the challenged pay practice continued following Mr. Webb's declaration on July 19, 2018, much less that it continued later in 2018, in 2019, and to the present day.  The mere allegation in the Motion for Conditional Certification that Waste Pro NC "continues to advise" Waste Pro Disposal Drivers that they must work a certain number of hours to receive the full day rate [Doc. 5 at p. 2], is insufficient to show that any Waste Disposal Drivers employed after July 19, 2018 are similarly situated to those who worked prior to that date.  *See Purdham v. Fairfax Cnty. Pub. Sc.*, 629 F. Supp. 2d 544, 548 (E.D.Va. 2009) ("Mere allegations

will not suffice; some factual evidence is necessary.").  As such, the end of the collective period should be July 19, 2018.

Moreover, Plaintiff has previously argued to the Court that Defendant "may have" stopped the challenged pay practice in 2017.  [*See* Doc. 3 at p. 12 ("Defendants may have halted the illegal pay practice at the heart of Plaintiffs' claims in 2017.")].  By conceding that Defendant "may have" stopped "halted the illegal pay-practice" in 2017, Plaintiff concedes that he has no evidence of it continuing in 2018 or 2019.  Accordingly, any collective that is certified, if any, should be limited to the period prior to July 19, 2018, the date of Mr. Webb's Declaration. *See, e.g., Chavez v. T&B Management, LLC*, 2018 WL 4398261, *7 (M.D.N.C. Sep. 14, 2018) (limiting notice to period in which challenged policy was in effect).

Defendant asserts conditional certification is not warranted.  However, it this Court does conditionally certify, the collective period should begin three years (3) from any ruling certifying the collective and end on July 19, 2018.

**E.    Plaintiff's Motion Focuses on Irrelevant Issues and Matters Outside of the Pleadings and Affidavits.**

Plaintiff acknowledges in his Motion that an "examination of discovery is ***not appropriate***" during the first stage of conditional certification.  [Doc. 193, p. 20 (citing *Gordon v. TBC Retail Group, Inc.*, 134 F. Supp. 3d 1027, 1032 (D.S.C. 2015) (emphasis added)].  Plaintiff further concedes that the Court's review at the conditional certification stage is limited to the pleadings and affidavits.  [Doc. 99, p. 12.]  Nevertheless, Plaintiff's Motion to Certify relies on a variety of matters outside of the pleadings and affidavits, none of which has any evidentiary value.

For example, Plaintiff relies on documents that he contends are from the Department of Labor related to audits of a non-party to this case, Waste Pro of Florida, Inc.  [Doc. 194-4.]  The alleged DOL documents, however, are not authenticated in any way and Plaintiff provides no basis

14

for the Court to determine their reliability or authenticity.  The "FLSA Narrative" attached as Exhibit D, for example, is undated and the author's name appears to be redacted.  [Doc. 194-4.] Numerous paragraphs and other information are also redacted from the alleged report, and Plaintiffs provide no explanation for the redactions.    [*See, e.g.,* Doc. 6-3, pp. 1-2.]  The alleged DOL reports are also limited to one region of Waste Pro of Florida, Inc. (Southeast Florida), and therefore have no bearing on Waste Pro NC's pay practices.

Aside from those issues, Plaintiff's reliance on the alleged DOL documents is perplexing, considering that the DOL found ***no violations*** related to any of the issues in this case.  [*See, e.g.,* Doc. 6-3, p.9 ("In regards to the alleged overtime violation, indeed employees were paid on a daily fee basis, however the firm accurately paid for their overtime hours.  Since the employees received the same rate for each day of work, the amount due for hours worked over 40 in the workweek was just half time of their regular rate").]  Plaintiffs attempt to explain away the DOL's finding of no violation by contending that the DOL incorrectly determined that Waste Pro FL intended for the day rate to cover for all hours worked.  [Doc. 5, p. 7-8, fn. 6.]  Plaintiffs therefore argue that the Court should consider the redacted DOL reports as evidence of FLSA violations by Waste Pro NC, but disregard the DOL's conclusion of no pertinent violations by Waste Pro FL.

Plaintiff also relies on testimony given by two Waste Pro of Florida, Inc., employees, Russell Mackie and Regina Lombardo, in *Andreu v. Waste Pro of Florida, Inc., et al.*, Case No. 0:2017-cv-60926 (S.D. Fla. May 9, 2017), as evidence that all Waste Pro USA, Inc. subsidiary companies paid their employees the same way.  Plaintiff flatly misstates the testimony given in that case.  Plaintiff contends, for example, that Mr. Mackie testified that "all Waste Pro drivers were paid at a day rate 'for the most part.'"  [Doc. 5, p. 5.]  Mr. Mackie's testimony, however, was limited to the Southeast Region of Waste Pro of Florida, Inc., the region that he oversees.  Mr.

Mackie testified as follows:

> Q:  And I think you said that not all employees are paid at that day rate, right?
>
> A:  Not every employee **in the region** is paid at that day rate.
>
> Q:  Okay. But the helpers and the drivers for the most part are, right?
>
> A:  Yes.

[*Hansen,* Doc. 99-6, p. 2 (emphasis added.)][7]  All other testimony offered by Mr. Mackie and Ms. Lombardo was also limited to one region of Waste Pro of Florida, Inc., which was the only defendant in the *Andreu* action.[8]

Plaintiff also allege that other lawsuits filed against Waste Pro of Florida, Inc., and Waste Pro USA, Inc., for unspecified FLSA overtime violations constitute "evidence" that conditional certification is appropriate here.  [Doc. 5, pp. 7-8.]  Plaintiffs fail to show that any of the other lawsuits involved allegations similar to those made here, and instead contend only that those cases involved "overtime violations."  [*Id.*]  More importantly, the fact that Waste Pro of Florida, Inc., or Waste Pro USA, Inc., have been sued before for unspecified overtime violations has no bearing on whether conditional certification is appropriate here.  *See, e.g., Alvarez v. Sun Commodities, Inc.*, 2012 U.S. Dist. LEXIS 85177, at *6-9 (S.D. Fla. June 20, 2012) (finding other lawsuits

---

[7]    Plaintiff included this excerpt of Mr. Mackie's testimony as an exhibit to his original Motion for Conditional Certification.  [*See Hansen*, Doc. 99-6, p. 2.]  Curiously, Plaintiff omitted the excerpt in his instant Motion to Certify, in which he falsely contends that Mr. Mackie offered testimony regarding the pay practices of every subsidiary of Waste Pro USA, Inc.  [*See* Doc. 194-5.]  The page of Mr. Mackie's testimony in which he makes clear that he was only testifying regarding one region of Waste Pro of Florida, Inc. is the only excerpt of his testimony that was included in Plaintiff's original Motion for Conditional Certification, but which was omitted from the instant Motion to Certify.

[8]    The *Andreu* case is also irrelevant as it involved the complaint of a single employee who abandoned his attempt to certify a collective action.  The complaint of one former employee in the Southeast Region of Waste Pro of Florida, Inc. has no bearing on the pay practices of Waste Pro NC.

against the defendant irrelevant to the conditional certification inquiry (citations omitted)).

## IV. DEFENDANT OBJECTS TO PLAINTIFF'S PROPOSED NOTICE AND METHODS OF PROVIDING NOTICE.

This Court has broad discretion in implementing the facilitation of notice to potential plaintiffs and ensuring the task is accomplished in an efficient and proper way. *See Schmidt v. Charleston Collision Holdings Corp.,* 2015 WL 3767436, *8 (D.S.C. June 17, 2015); *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 165 (1989). Defendant objects, as set forth above, to conditional certification of the class proposed by Plaintiff. Nevertheless, in the event this Court approves Plaintiff's request for conditional certification, in whole or in part, the following outlines Defendant's objections to the numerous deficiencies in Plaintiff's Proposed Notice, the dissemination of those forms and his requests for contact information of putative opt-in plaintiffs.

### A. The Proposed Notice is Overly Broad and Otherwise Improper.

First, Plaintiff seeks to provide notice to "all current and former Waste Disposal Drivers, who were/are employed by Defendant, Waste Pro of North Carolina, Inc. [...] and who were/are paid on a job/day rate basis, within the last three (3) years prior to the filing of the Original Complaint" (Doc. 5, at p. 1), regardless of their lack of similarity. Based on the reasons set forth above, the proposed Notice is broader than requested in the Motion to Conditionally Certify and, to the extent that the Court finds that notice is appropriate, it should be limited to involving Drivers who worked at Waste Pro NC's Concord facility three (3) years prior to this Court's ruling.

Second, the language describing the proposed notice as "Court-Authorized" (Doc. 6 at p. 4) is misleading in that it gives the impression that the Court has actually authorized this action when, in fact, the Court has not. As the Supreme Court has instructed, "[i]n facilitating notice, the Court must avoid communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits." *Hoffman-LaRoche,* 493 U.S. at 168-69. This Court has

previously removed similarly misleading language from a proposed notice indicating that an action was authorized by the Court. *See Moodie v. Kiawah Island Inn Co., LLC,* 2015 WL 12805169, *4 (D.S.C. July 27, 2015) (removing language that "This Notice has been authorized by the United States District Court for the District of South Carolina" as "unnecessary and potentially confusing" and that "[w]orkers may not know import of the notice being 'authorized' and assume some unintended judicial sponsorship.").

Additionally, the language that "the Court has not yet decided whether Defendant has done anything wrong" should be removed because it is confusing and prejudicial to Defendant. [Doc. 6 at p. 5.]  Should the Court find that any commentary on its position is necessary, potential opt-ins should merely be informed that this Court "takes no position regarding the merits of the parties' claims or defenses." *See Aytch v. Trulife Health Servs., LLC,* 2018 WL 1784461, at *5 (D. Md. Apr. 12, 2018).

Third, in the section entitled "Your Legal Rights & Options," Plaintiff's proposed Notice incorrectly states that putative plaintiffs have only two (2) options: "Do Nothing" or "Ask to Be Included." [*See* Doc. 6 at p. 5.] Defendant objects as the proposed Notice fails to inform potential plaintiffs that they have a third option to joining the lawsuit or doing nothing – they can file a separate suit. *See Moodie,* 2015 WL 12805169 at *5 (finding that the plaintiffs' language suggests that joining the lawsuit is the only way to vindicate any rights they may have was improper and adopting defendant's suggested language.)

This section should advise potential opt-ins that they have the right to engage their own counsel, which Plaintiff's proposed Notice fails to do. *See Butler v. DirectSAT USA, LLC,* 876 F. Supp. 2d 560, 575 (D. Md. 2012) (authorizing language to inform potential opt-ins to state that participating plaintiffs may retain their own counsel) (citing *Whitehorn v. Wolfgang's Steakhouse,*

*Inc.*, 767 F.Supp.2d 445, 450 (S.D.N.Y. 2011)). In fact, Plaintiff's proposed Notice states in the "Legal Representation if You Join" section: "if you join in the lawsuit, you will be represented by the Representative Plaintiff through his attorneys as counsel for the class." [Doc 6 at p. 6.] This language should be amended to explicitly inform the putative plaintiffs of their right to proceed with their own counsel, should they decide to join this action. *See Cedillos-Guevara, v. Mayflower Textile Servs., Co.,* 2014 WL 7146968, *4 (D. Md. Dec. 12, 2014) (directing plaintiffs to amend the proposed notice to "explicitly inform the putative plaintiffs of their option to join the lawsuit with their own counsel, should they decide to join this action.").[9]

Fifth, in the section entitled "Effect of Joining Suit," while the proposed Notice generally states "you may be required to provide information, sit for depositions, and testify in court," the proposed notice should be modified to more clearly inform potential plaintiffs that they may be required to travel to Charleston, South Carolina, for a deposition or to be a witness in a trial. *See Schmidt,* 2015 WL 3767436 at *9 (permitting defendant's requested language that "If you elect to join this lawsuit, you may be required to provide information, give a deposition under oath, produce documents, respond to written interrogatories, and/or testify in Court, including trial"); *see also Butler,* 876 F.Supp.2d at 575 (modifying proposed notice to advise potential plaintiffs of possibility of having to participate in discovery process and at trial); *Shaver v. Gills Eldersburg, Inc.,* 2015 U.S. Dist. LEXIS 136060, *31 (D. Md. Oct. 13, 2015). Defendant requests the following language be included in the notice: "If you elect to join this lawsuit, you may be required to provide information, give a deposition under oath, produce documents, respond to written

---

[9]     Additionally, Defendant proposes that the "Effect of Joining this Lawsuit" section should come before the sections "Do Nothing" or "Ask to Be Included." This ordering is more logical, as informing potential plaintiffs of their discovery and other obligations is important for their consideration in whether to join the lawsuit. *See Moodie,* 2015 WL 12805169 at *5.

interrogatories, and/or testify in Court in Charleston, South Carolina, including at trial."

Sixth, the proposed notice is deficient as it fails to disclose Defendant's position in the lawsuit. *See Hollis v. Alston Pers. Care Servs., LLC,* 2017 WL 3327591, *5 (M.D.N.C. Aug. 3, 2017). Here, as in *Hollis*, the proposed notice simply states that "Defendant has denied all liability." [Doc. 6 at p.5; *cf Hollis,* 2017 WL 3327591 at *5.] However, Defendant has done more than deny Plaintiff's allegations – it has alleged and will allege numerous defenses that directly contradict Plaintiff – and Opt-In Plaintiffs' – claims and assertions. To be sure, "[t]his is not a straightforward class action but instead is one in which FLSA Collective Plaintiffs may have to appear, testify, and prove their entitlement to recovery and may not be able to rely simply upon Plaintiff's success with respect to the allegedly erroneous policy." *Id.* Accordingly, and "in the interests of full disclosure, those opting in to this case should have some idea of the full ramifications of opting in to this lawsuit." *Id.; see also Shaver,* 2015 U.S. Dist. LEXIS 136060 at *30 (finding legitimate the defendant's concerns that notice was faulty because it did not disclose the defendant's position); *Butler*, 876 F. Supp. 2d at 575, n. 17 (requiring amendment of proposed notice to include a statement setting forth defendant's position); *Cedillos-Guevara,* 2014 U.S. Dist. LEXIS 172435 at *9 (same)).  Defendant's position that should be included is that "Defendant has denied all liability and affirmatively stated that certain claims are either time-barred or barred by the Federal Motor Carrier Act."

Seventh, any references to "money" or "benefits" should be replaced with "wages." *See Davis v. BT Americas, Inc.*, 2016 U.S. Dist. LEXIS 168695, *14 (E.D. Va. Nov. 9, 2016) (finding that the proposed notice should reflect that the lawsuit seeks to recover "wages," not "damages."

Eighth, the proposed Notice should identify Defendant's counsel and their contact information. *See Arevalo v. D.J.'s Underground, Inc.*, 2010 U.S. Dist. LEXIS 64516, *4 (D. Md.

June 29, 2010) (requiring inclusion of defense counsel's contact information); *Moseman v. U.S. Bank Nat'l Ass'n,* 2018 WL 3616864, *2 (W.D.N.C. June 12, 2018) (same)). Moreover, the objectives of the FLSA are not undermined by accommodating Defendant's request. *See Shaver,* 2015 WL 5897463 at *11 (ordering inclusion of defense counsel's names, telephone numbers, mailing addresses, and email addresses, noting the "overarching policies" of the FLSA in providing accurate notice concerning the collective action, so that potential plaintiffs can make informed decisions about whether to participate) (citing *Flores v. Unity Disposal & Recycling, LLC,* 2015 WL 1523018, *1 (D. Md. Apr. 2, 2015)).

Ninth, the proposed Notice should be amended to clearly advise potential opt-ins that they could be subject to attorneys' fees and costs if they not do prevail in this case. *See Byard v. Verizon W. Virginia, Inc.,* 287 F.R.D. 365, 375 (N.D.W. Va. 2012) (ordering a statement informing putative opt-ins of potential attorneys' fees and costs because "notice of [fee] agreements should be provided up front" and "the fee structure may impact an opt-in Plaintiff's recovery, if any") *see also Lineras v. Inspiration Plumbing LLC,* 2010 WL 4623940, *2 (E.D.Va. Nov. 3, 2010) ("This Court sees no reason why the contingency fee percentage should not be disclosed, as that percentage will better inform potential plaintiffs in their choice of whether to opt-in. The contingency fee percentage should therefore be added to the notice.").

In that vein, the notice should also advise prospective opt-ins that they could be subject to paying Defendant's costs of defense if Defendant ultimately prevails. *See Turner,* 268 F. Supp. 3d at 842 (citing *Garcia v. Elite Labor Serv., Ltd.,* 1996 U.S. Dist. LEXIS 9824, *12 (N.D. Ill. Jul. 11, 1996) (finding plaintiff's proposed notice should be modified to include a statement that "if you do not prevail on your claim, court costs and expenses may possibly be assessed against you"); *McCoy v. RP, Inc.* 2015 WL 6157306, *7 (D.S.C. Oct. 19, 2015) (citing *Byard,* 287 F.R.D. at 375

21

(including language that "If you do not prevail on your claim, court costs and expenses may possibly be assessed against you.")). As such, Defendant requests the following language be included in the "EFFECT OF JOINING SUIT" section: "If you do not prevail on your claim, court costs and expenses may possibly be assessed against you."

Finally, the proposed Notice does not state that the Court has only **conditionally** certified the collective action. Given the "overarching policies" of the FLSA in providing accurate information so that potential plaintiffs can make informed decisions about whether to participate, this, too, should be changed to notify putative plaintiffs of the full ramifications of joining this lawsuit, i.e., that that the Court may decertify this action at a later date, thereby removing them from the case. *See Shaver,* 2015 WL 5897463 at *11; *see also Hollis,* 2017 WL 3327591 at *5.

### B.    Plaintiff's Proposed Methods of Distributing Notice Are Inappropriate.

If the Court reaches the issue of notice, Defendant has no objection to notice being mailed to potential plaintiffs through U.S. Mail – the standard practice. However, distributing the notice to potential opt-in plaintiffs through e-mail and sending a reminder e-mail notice is inappropriate. *See Moseman,* 2018 WL 3616864 at *2 (finding duplicative and repetitive unsolicited contact with potential party plaintiffs after the initial Notice by First Class Mail may create the appearance of undue Court involvement in the solicitation of claims.)  Moreover, Plaintiff has not demonstrated an inability to contact the members through written notice. *See Regan v. City of Charleston, S.C.,* 2014 WL 3530135, *6 (D.S.C. July 16, 2014); *Cedillos-Guevara,* 2014 WL 7146968 at *4.

As for sending notice via text message, that request should also be denied. Like requests for e-mail dissemination, absent a further showing of need, courts have generally denied requests to send notice via text message. *See, e.g., Mullis v. Wings Over Spartanburg, LLC,* 2017 WL 749362, at *4 (D.S.C. Feb. 27, 2017) (disapproving sending notice via text message); *Chavez v.*

*T&B Mgmt., LLC,* 2018 WL 4398261, *6 (M.D.N.C. Sept. 14, 2018) (noting the court's concern with the privacy of the putative class in denying plaintiffs' request for the production of the telephone numbers for all collective members). Plaintiff asserts that given the "highly migratory nature of the putative class members," text messaging should be permitted.[10] However, this Court, as well as others within this Circuit have held found that an assertion that putative members are "migratory in nature" does not rise to the level of a "special need." *See McCoy,* 2015 WL 6157306 at *5; *see also Pecora v. Big M Casino, Inc.,* 2019 WL 302592, *5 (D.S.C. Jan. 23, 2019) (rejecting a similar argument for notice via text message because it would be "the best chance of contact with these class members"); *Cedillos-Guevara,* 2014 WL 7146968 at *4 (denying plaintiff's request for potential class members' telephone numbers based upon a "mere speculation" that the members are semi-literate and that the notices will not be understood).

Notice by U.S. Mail is more formal and does not have the same propensity for abuse as electronic communications. In addition, limiting the notice to U.S. Mail allows the Court greater supervision in counteracting any misleading communications. *See Hoffman,* 493 U.S. at 171. Saliently, notice by U.S. Mail is more uniform and less invasive upon potential class members who may not want to receive text messages or phone calls at all hours of the day. Given these considerations Plaintiff's request for e-mail notice should be denied, in the event this Court grants conditional certification, with the proposed notice (as revised) only being distributed via U.S. mail.

The Court should also reject Plaintiff's request to send a reminder notice after the initial notice. The proposed notice (as revised) is sufficient notice to potential collective members. A reminder notice is unnecessary and only serves as a solicitation by Plaintiff's counsel. *See Byard,*

---

[10]    Defendant disputes members of the collective are "highly migratory," given that their professions require a Commercial Driver's License.

287 F.R.D. at 373 (finding that, where the notice period was only 60 days, a reminder notice was both unnecessary and potentially improper as reminder notices "have a tendency to both stir up litigation … and inappropriately encourage putative plaintiffs to join the suit."). Moreover, courts in this District do not favor sending reminder notices. *See, e.g., Irvine v. Destination Wild Dunes Mgmt.,* 132 F. Supp. 3d 707, 711 (D.S.C. 2015) (rejecting plaintiff's request to send a notice reminder 30 days after sending the initial notice); *Regan,* U.S. Dist. LEXIS 96317 at *36-37 (finding that the Authorized Notice was sufficient to advise putative plaintiffs of their right to opt-in to the lawsuit). Accordingly, Plaintiffs should not be permitted to send a Reminder Notice.

### C.     A Ninety-Day Notice Period is Excessive and Unnecessary.

In their Motion, Plaintiffs request a notice period of 90 days from the date of mailing of the proposed notice for potential plaintiffs to file their consent to join this action.  Defendant objects to this request as a notice period of 45 days is more appropriate in this case. District courts in the Fourth Circuit generally authorize opt-in periods between thirty and sixty days. *See, e.g., Mullis,* 2017 WL 749362 at *4 (authorizing 45-day notice period); *Regan,* 2014 U.S. Dist. LEXIS 96317 at *35, e.g., *Byard,* 287 F.R.D. at 373; *Steinberg v. TQ Logistics, Inc.,* 2011 U.S. Dist. LEXIS 38289 (D.S.C. Ap. 7, 2011); *Schmidt,* 2015 WL 3767436 at *10. Accordingly, Plaintiff's request for a 90 day notice period should be denied and a 45 day notice period should be utilized.

### D.     Defendant Should Not be Required to Provide All of the Requested Contact Information.

Plaintiff's request for potential plaintiffs' telephone numbers, social security numbers, and e-mail addresses should be denied.  As to telephone numbers, Plaintiff is not entitled to such information as such a production subjects the potential plaintiffs to unsolicited telephone calls and hampers the Court's ability to control the distribution of information, in turn frustrating the purpose of judicial participation in the notice process. *See Schmidt,* 2015 WL 3767436 at *7 ("[G]iven the

greater intrusion that a telephone call entails and the open-ended nature of the resultant communication, the Court finds that Defendants need not produce that information to Plaintiffs at this time."); *see also Blake v. Broadway Servs., Inc.,* 2018 WL 4374915, *5 (D. Md. Sept. 13, 2018) (while noting "the variety of communication channels used in the modern era" the court strictly limited initial communications with potential plaintiffs to the official notice procedures and court-approved language."); accord *Stickle v. SCI Western Market Support Center, L.P.,* 2009 WL 3241790, at *7 (D.Ariz. Sept. 30, 2009) (denying production of telephone numbers that would lead to "needless intrusion into the privacy of these individuals and their families").

Defendant should not be required to provide e-mail addresses, phone numbers, or social security numbers for collective members at this time because Plaintiff has made no showing of any "special need" for the disclosure of this information. *See Calderon v. Geico General Ins. Co.,* 2011 WL 98197, *9 (D. Md. Jan. 12, 2011) ("[C]ourts in this Circuit have required plaintiffs to show a 'special need' for the disclosure of telephone numbers") (citing *Ruiz v. Monterey of Lusby, Inc.*, 2014 U.S. Dist. LEXIS 61791, *3 fn 1 (D. Md. May 5, 2014) ("Defendants will not . . . be required to provide phone numbers for potential opt-in plaintiffs at this time because Plaintiffs have made no showing of any 'special need' for the disclosure of this information."); *Butler,* 876 F. Supp. 2d at 575 fn 17 (same); *Reynolds v. Wyndham Vacation Resorts, Inc.*, 2015 U.S. Dist. LEXIS 162662, *23 (D.S.C. Dec. 4, 2015) (denying Plaintiff's request for the telephone numbers, dates of birth, and Social Security numbers of the potential class members (citing *Amrhein v. Regency Mgmt. Servs., LLC*, 2014 U.S. Dist. LEXIS 36477, 2014 WL 1155356, at *10 (D. Md. Mar. 20, 2014). Indeed, given the "clear[] … substantial privacy concerns associated with social security numbers," the disclosure of such sensitive absent a showing of substantial need would be improper. *See Byard,* 287 F.R.D. at 376–77 (denying discovery of putative plaintiffs' social

security numbers noting the clear substantial privacy concerns associated with social security numbers); *Ruffin v. Entertainment of the Eastern Panhandle,* 2012 WL 761659, *5 (N.D. W. Va. Mar. 7, 2012) (denying plaintiff's request for social security numbers because plaintiff had "not established a need for this information and concludes that the other information ordered to be produced should be sufficient to provide notice to the opt-in class.") (citing *Faust v. Comcast Cable Commc'ns Mgmt.,* 2011 WL 5244421, *6 n. 13 (Nov. 1, 2011) (same); *Cedillos-Guevara,* 2014 WL 7146968 at *4 (denying plaintiffs' request for potential class members' telephone numbers, birthdates and social security numbers and finding that their "mere[] speculat[ion]" that the members are semi-literate and that the notices will not be understood" was insufficient to justify the exposure of such personal information.).

### E.     Plaintiff Should be Required to Use a Third Party Administrator.

In order to protect potential collective members from solicitations by Plaintiff's counsel, Defendant requests that, if notice is allowed by the Court, a third-party administrator be utilized at Plaintiff's expense. In *Lynch v. Dining Concepts Group, LLC,* 2015 WL 5916212, *7 (D.S.C. Oct. 8, 2015), the defendant requested the use of a third-party administrator for the distribution of notice. The court ordered the parties to meet and confer to agree on a third-party administrator and further ordered the plaintiffs to bear the cost of the third-party administrator. *See id.* It reasoned that "the privacy of potential class members weighs in favor of requiring a third party-administrator." *Id.; see also Robinson v. Empire Equity Grp. Inc.,* 2009 WL 4018560, *5 (D. Md. Nov. 18, 2009). Accordingly, Defendant requests the use of a third-party administrator to coordinate and distribute the Notice to putative class members in order to: (1) prevent misuse of the putative plaintiffs' personal information, and (2) to protect the privacy of the putative plaintiffs.

### V.     CONCLUSION.

For the foregoing reasons, Plaintiff's Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members should be denied. Although Defendant asserts conditional certification is not warranted, if this Court is inclined to conditionally certify, it should be limited to:

(a) the claim that potential members were told they had to work a threshold number of hours in order to be paid the day rate;

(b) the Concord Division of Defendant, and

(c) the time period of employment of potential members beginning three (3) years from the date of the Court's ruling and ending on July 19, 2018.

Respectfully submitted this 10th day of December, 2019.

JOHNSON TOAL & BATTISTE, P.A.

/s/ *George C. Johnson*
George C. Johnson, Fed. Id No. 6538
P.O. Box 1431
Columbia, SC 29202
(803) 252-9700
george@jtbpa.com

STOVASH, CASE & TINGLEY, P.A.

Amy S. Tingley, Esquire
Florida Bar Number 0068871
Matthew J. Pearce, Esquire
Florida Bar Number 0108368
Jennifer Elouise Belbeck, Esquire
Florida Bar No. 0088946
The VUE at Lake Eola
220 N. Rosalind Avenue
Orlando, Florida 32801
Telephone: (407) 316-0393
Telecopier: (407) 316-8969

*Counsel for Defendant*
*Waste Pro of North Carolina, Inc.*

27

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished to the below-named attorneys on this December 10, 2019.

|  |  |
|---|---|
| ___ HAND DELIVERY | Ben Whaley Le Clercq, Esquire |
| ___ U.S. MAIL | Le Clercq Law Firm, P.C. |
| ___ FAX TRANSMISSION | 708 S. Shelmore, Suite 202 |
| ___ E-MAIL TRANSMISSION | Mt. Pleasant, South Carolina 29464 |
| ✓ ECF NOTICE | Ben@leclercqlaw.com |
|  |  |
| ___ HAND DELIVERY | C. Ryan Morgan, Esq. |
| ___ U.S. MAIL | Morgan & Morgan, P.A. |
| ___ FAX TRANSMISSION | 20 N. Orange Ave Suite #1600 |
| ___ E-MAIL TRANSMISSION | Orlando, FL 32802 |
| ✓ ECF NOTICE | morgan@forthepeople.com |
|  |  |
| ___ HAND DELIVERY | Paul M. Botros, Esq. |
| ___ U.S. MAIL | 600 N. Pine Island Road Suite #400 |
| ___ FAX TRANSMISSION | Plantation, FL 33324 |
| ___ E-MAIL TRANSMISSION | pbotros@forthepeople.com |
| ✓ ECF NOTICE |  |
|  |  |
| ___ HAND DELIVERY | Austin W. Anderson, Esq. |
| ___ U.S. MAIL | Federal I.D. No. 777114 |
| ___ FAX TRANSMISSION | Texas Bar No. 24045189 |
| ___ E-MAIL TRANSMISSION | austin@a2xlaw.com |
| ✓ ECF NOTICE |  |
|  |  |
| ___ HAND DELIVERY | Clif Alexander, Esq. |
| ___ U.S. MAIL | Federal I.D. No. 1138436 |
| ___ FAX TRANSMISSION | Texas Bar No. 24064805 |
| ___ E-MAIL TRANSMISSION | 819 N. Upper Broadway |
| ✓ ECF NOTICE | Corpus Christi, TX 78401 |
|  | clif@a2xlaw.com |

*/s/ George Johnson*
George Johnson, Esquire