# EXHIBIT "A"

## COLLECTIVE ACTION SETTLEMENT AGREEMENT

This Collective Action Settlement Agreement ("Agreement") is made in settlement of the claims asserted in the case *Privette, et al v. Waste Pro of North Carolina, Inc.*, Case No. 2:19-cv-3221-DCN (the "Action"), pending in the United States District Court for the District of South Carolina (the "Court"). The Agreement is made by and between the Parties: Named Plaintiff Kenneth Privette ("Named Plaintiff") and the individuals who chose to join the case as party plaintiffs listed in Exhibit A to this Agreement ("Opt-In Plaintiffs") on the one hand (collectively, "Plaintiffs") and, on the other hand, Defendant Waste Pro of North Carolina, Inc. ("Defendant" or "WPNC"). Plaintiffs and Defendant may be referred to herein individually as a "Party" or collectively as the "Parties."

This Agreement is made by and through counsel for Plaintiffs and Defendant, and is made as a compromise between them for the complete and final settlement of the claims, differences and causes of action raised by Plaintiffs in the Action.

### RECITALS

A.     On October 2, 2017, the Named Plaintiff Kenneth Privette, along with two other waste disposal drivers, filed the predecessor to this Action in the District Court of South Carolina against WPNC and other entities. *See Anthony Wright, Daniel Hansen, and Kenneth Privette, individually and on behalf of others similarly situated v. Waste Pro USA, Inc., Waste Pro of Florida, Inc., Waste Pro of South Carolina, Inc., and Waste Pro of North Carolina, Inc.* (District of South Carolina, Case No. 2:17-cv-2654-DCN). Ultimately, on November 12, 2019, the District of South Carolina severed the predecessor action, resulting in this Action being filed between the Parties.

B.      In the Action, the Named Plaintiff alleged that Defendant violated the Fair Labor Standards Act ("FLSA") by failing to pay him and other drivers complete overtime wages for all hours worked.  The Named Plaintiff sought damages, penalties, attorneys' fees, and costs, on his own behalf and on behalf of similarly situated individuals.

C.      On April 16, 2020, the Court granted the Named Plaintiff's Motion for Conditional Certification.  Notice of the lawsuit was sent to the putative collective class.  In total, 119 Plaintiffs (including the Named Plaintiff) have filed consents to join the Action (and who are identified on Exhibit A), which state:

> I designate the Class Representative(s) as my agent to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to the lawsuit.

D.      Over the next several months, the Parties participated in extensive discovery and fact investigations; exchanged information, including payroll records and time records; and provided each other with additional details regarding the Plaintiffs' fact allegations and Defendant's fact defenses.  Counsel for both Parties reviewed and analyzed the records for purposes of calculating Plaintiffs' potential damages.

E.      On May 27, 2021, the Parties engaged in Zoom videoconference mediation with Carlos Burruezo acting as the mediator.  Carlos Burruezo is very experienced in mediating wage and hour collective actions.  Even though the Parties did not settle at mediation, the Parties continued discussing resolution, and after extensive arm's length negotiations, the Parties reached an agreement to settle the claims asserted in the Action.

F.      Based upon the investigation of Plaintiffs' Counsel and taking into account the contested factual and legal issues involved, the expense and time necessary to prosecute the action through trial, the risks and costs of further prosecution of the Action, the uncertainties of

complex litigation, and the benefits to be received pursuant to this Agreement, Plaintiffs' Counsel and the Named Plaintiff have concluded that a settlement with Defendant on the terms set forth in this Agreement is fair, reasonable, adequate, and in the best interests of the Plaintiffs. The Plaintiffs and Plaintiffs' Counsel have agreed to settle this Action with Defendant on the terms set forth in this Agreement.

G.    Defendant denies the claims asserted in the Action and makes no admission whatsoever of liability or violation of any statute.  Defendant nevertheless desires to settle the Action on the terms set forth in this Agreement for the purpose of avoiding the burden, expense, and uncertainty of continuing litigation, and for the purpose of putting to rest the controversies engendered by the Action.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** among the Parties, by and through their respective attorneys of record, and subject to the approval of the Court, that in consideration of the foregoing and of the promises and mutual covenants contained herein, and other good and valuable consideration, the Action shall be settled, released, and dismissed with prejudice, upon and subject to the following terms and conditions:

1.    <u>**DEFINITIONS**</u>

For purposes of this Agreement, the following definitions shall apply, in addition to the definitions set forth in other sections of this Agreement:

A.    "Defendant's Counsel" shall mean the law firm of Stovash, Case & Tingley, P.A.

B.    "FLSA" shall mean the federal Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*

C.    "Plaintiffs' Counsel" shall mean the law firms of Morgan & Morgan, P.A. and Anderson Alexander, PLLC.

D.    "Released Claims" has the meaning set forth in Section 3, *infra*.

E.      "Released Parties" means Waste Pro of North Carolina, Inc., including any of its past, present and future, direct and indirect parents (including, without limitation, Waste Pro USA, Inc.), franchisors, partners, subsidiaries, affiliates, predecessors, agents, officers, directors, managers, shareholders, employees, successors, agents, representatives, insurers, attorneys or other persons or entities acting on their behalf.

F.      "Settlement Effective Date" shall mean the date upon which the Court enters an Order granting approval of the settlement or, if an appeal is filed on the Court's Order granting approval of the settlement, the date of entry of the last final Order resolving all appeals and affirming the Court's Order approving the settlement.

**2.      SETTLEMENT AMOUNT**

In consideration for the actions, promises and mutual covenants and releases described herein, Defendant shall pay the total gross sum of $Five Hundred Twenty-One Thousand Dollars ($521,000.00) (the "Settlement Amount") in settlement of all the Released Claims as described in Section 3 *infra*. The Settlement Amount includes all amounts to be paid by Defendant for payments to the Plaintiffs (including a service award to the Named Plaintiff) and all attorneys' fees, litigation costs, and expenses of Plaintiffs' Counsel, costs incurred in administering this settlement, and any other monetary claims that were or could have been made by Plaintiffs in the Action.  The Settlement Amount is the maximum amount that Defendant is obligated to pay under this Agreement, except for the employer's share of payroll taxes on the payments made to Plaintiffs as W-2 income.  In no event shall Defendant be required to pay more than the Settlement Amount in complete satisfaction of all its obligations under this Agreement, except for Defendant's payment of the employer's share of payroll taxes.

4

3.    **RELEASED CLAIMS** The following may be referred to collectively as the "Released Claims":

A.    The Named Plaintiff, on behalf of his heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, hereby knowingly and voluntarily releases and discharges the Released Parties from any and all claims and rights of any kind that he may have, whether now known or unknown, including, but not limited to, arising out of or in any way connected with his employment with Defendant from the beginning of time through the execution of this Agreement.  These claims and rights released include, but are not limited to, claims under Title VII of the Civil Rights Act of 1964 (as amended); 42 U.S.C. § 1981 (as amended); the Age Discrimination in Employment Act; the Equal Pay Act; the Americans With Disabilities Act (as amended); Sections 503 and 504 of the Rehabilitation Act of 1973; the Family Medical Leave Act; the Employee Retirement Income Security Act; the Occupational Safety and Health Act; the Workers' Adjustment and Retraining Notification Act, as amended; any state, civil or statutory laws, including any and all human rights laws and laws against discrimination, any other federal, state or local fair employment statute, code or ordinance, common law, contract law, tort, including, but not limited to, fraudulent inducement to enter into this contract, and any and all claims for attorneys' fees and costs.

B.    Each Opt-In Plaintiff, on behalf of his/her respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, hereby knowingly and voluntarily releases and discharges the Released Parties from any and all known and unknown claims that were raised or that could have been raised in the Action, including claims under the Fair Labor Standards Act ("FLSA"); any

5

claims under the theory of quantum meruit; or any other state, federal, or local wage-and-hour laws related to the payment of wages, any other benefits, liquidated damages, penalties, or interest under the FLSA or applicable state laws (including statutory and common law claims) against Waste Pro of North Carolina, Inc., and/or the Released Parties from the beginning of time through the execution of this Agreement.

4. **COURT APPROVAL**

A.    This Agreement is conditioned upon the Court's approving the settlement terms set forth herein.  The Parties agree to submit to the Court a Joint Motion to Approve Settlement, seeking an Order from the Court, *inter alia*: (1) approving the terms of the Parties' settlement as reflected in this Agreement; (2) providing for application of the Release set forth in Paragraph 3 of this Agreement to apply to all Plaintiffs who negotiate their settlement checks (as explained below); and (3) dismissing the Action and Plaintiffs' claims with prejudice.

B.    If the Court denies with prejudice the Joint Motion to Approve Settlement, then this Agreement shall be deemed null and void, of no force and effect, inadmissible as evidence, and of no probative value, and the Parties hereto represent, warrant, and covenant that neither the Agreement nor any discussions, conversations, or negotiations leading to execution of the Agreement, will be used or referred to for any purpose whatsoever.

5. **NO ADMISSION OF LIABILITY; INADMISSIBILITY OF THIS AGREEMENT; PARTIES' AUTHORITY**

A.    Nothing contained in this Agreement shall be construed as or deemed an admission of liability, damages, culpability, negligence, wrongdoing, or other unlawful behavior on the part of Defendant.  Defendant denies any liability or wrongdoing of any kind associated with the claims alleged and the allegations contained in the Complaint.

6

B.    This Agreement is a compromise of disputed claims and shall not be construed as an admission of liability at any time or for any purpose, under any circumstances, by the Parties, the Released Parties, or by any third-party.  The Parties further acknowledge and agree that neither this Agreement nor the settlement shall be used to suggest an admission of liability in any dispute the Parties or any third-parties may have now or in the future with respect to any person or entity, including Defendant and/or the Released Parties.  Neither this Agreement nor anything in it, nor any part of the negotiations that occurred in connection with the creation of this Agreement, shall constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding, or administrative proceeding, and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce its terms.

6.    **ALLOCATION OF SETTLEMENT AMOUNT**

A.    Subject to Court approval, the Settlement Amount shall be payable as follows: (1) $309,500.00 will be allocated to payments to be made to Plaintiffs in the amounts set forth in the spreadsheet attached hereto as Exhibit A ("Settlement Payments"); and (2) $208,000 shall be payable to Plaintiffs' counsel for attorney's fees and for reimbursement of litigation costs and expenses.  Defendant will not oppose Plaintiffs' Counsel's application to the Court for approval of attorneys' fees and litigation costs in the amounts set forth in this section.

B.    Plaintiffs' Counsel may apply to the Court to allocate a reasonable service payment of $3,500 from the Settlement Amount for the time and effort the Named Plaintiff spent in securing the settlement in this Action (in addition to compensating him for his portion of the overall settlement proceeds).  Defendant will not oppose this service payment request.

7.    **SETTLEMENT PAYMENTS AND DISTRIBUTION OF CHECKS**

7

A.      Within fourteen (14) days after the Settlement Effective Date, Defendant shall provide to Plaintiffs' Counsel the Settlement Payments for Plaintiffs' counsel to distribute to Plaintiffs.  Plaintiffs' counsel will be responsible for the costs of distributing the Settlement Payments to Plaintiffs.

B.      The Settlement Payments will be paid to Plaintiffs in two separate checks, each of which will be for 50% of the gross settlement amount allocated to that Plaintiff in Exhibit A. The first check will be allocated as wages, and payroll taxes will be withheld from this payment, which will be reported on IRS Form W-2.  The second check will be allocated as liquidated damages under the FLSA, and payroll taxes will not be withheld from this payment, which will be reported on an IRS Form 1099.

C.      Each settlement check will have a Release printed on the back of the check that will state:

> By negotiating this check, I hereby release and discharge Waste Pro of North Carolina, Inc., including any of its past, present and future, direct and indirect parents, franchisors, partners, subsidiaries, affiliates, predecessors, agents, officers, directors, managers, employees, successors, agents, representatives, insurers, attorneys or other persons or entities acting on their behalf (the "Released Parties"), from any and all known and unknown claims that were raised or that could have been raised in the Action, including claims under the Fair Labor Standards Act ("FLSA"); any claims under the theory of quantum meruit; or any other state, federal, or local wage-and-hour laws related to the payment of wages, any other benefits, liquidated damages, penalties, or interest under the FLSA or applicable state laws (including statutory and common law claims) against Waste Pro of North Carolina, Inc., and/or the Released Parties.

Any Plaintiff who fails to timely negotiate a Settlement Payment check will forfeit his or her right to receive any payments under this Agreement.

D.      Each Settlement Payment check shall indicate on its face that it will be void after one hundred eighty (180) days.  Accordingly, Plaintiffs each shall have one hundred eighty (180) days to cash, deposit, or otherwise negotiate each of their Settlement Payment checks.

Settlement Payment checks that have not been cashed, deposited, or otherwise negotiated within 180 days shall be null and void.   Any funds from such Settlement Payment checks shall be retained by Defendant.

      E.    Each Plaintiff shall be obligated to obtain his or her own independent tax advice concerning the proper income reporting and tax obligations regarding any and all payments and/or other remuneration he or she receives or obtains pursuant to this Agreement, and shall further assume the responsibility of remitting to the Internal Revenue Service and any other relevant taxing authorities any and all amounts required by law to be paid out of any monies received, or other remuneration obtained, under this Agreement, without any contribution whatsoever from any of the Released Parties or Plaintiffs' Counsel.  Nothing in this Agreement shall be construed as Defendant or Plaintiffs' Counsel providing any advice regarding the reporting or payment of taxes or the tax consequences of a Plaintiff's participation in any portion of this Agreement.

      F.    All payments made to Plaintiffs in resolution of their claims in this Action shall not be considered wages for purposes of calculating or recalculating benefits provided by or to Defendant's employees and their beneficiaries under the terms and conditions of any benefit plan.

      G.    Plaintiffs' Counsel will send a Notice to Plaintiffs, along with the Settlement Payments, in the form attached hereto as Exhibit B.

      H.    Within fourteen (14) days of the Settlement Effective Date, Defendant shall pay the attorneys' fees and litigation costs and expenses approved by the Court to Plaintiffs' Counsel via wire transfer or by check.  Defendant will issue to Morgan and Morgan, P.A. and Anderson

Alexander, PLLC an IRS Form 1099 for the attorneys' fees and litigation costs and expenses approved by the Court.

I.      Except as otherwise provided herein, the Parties shall bear their own attorneys' fees, costs, and expenses incurred in the prosecution, defense, or settlement of the Action. Plaintiffs and Plaintiffs' Counsel shall not seek an award of attorneys' fees, costs, or expenses in the Action except as set forth in Sections 6(A) and 7(H).

**8.      <u>REASONABLE COMPROMISE OF BONA FIDE DISPUTE</u>**

The Parties agree that the terms of this Agreement represent a reasonable compromise of disputed issues, arising from a bona fide dispute over FLSA coverage and the merits of Plaintiffs' claims and alleged damages and agree to represent the same to the Court.  The Parties further agree that the settlement is a fair, reasonable, and adequate resolution of Plaintiffs' claims and is in the best interests of the Plaintiffs.

9.     **AUTHORITY TO BIND**

The Named Plaintiff and Plaintiffs' Counsel warrant and represent that they are the duly authorized representatives of all Plaintiffs and they are authorized to make decisions on behalf of all Plaintiffs, including in connection with the settlement of Plaintiffs' claims in the Action.  The Named Plaintiff and Plaintiffs' Counsel also warrant and represent that they are expressly authorized to take all appropriate action required or permitted to be taken by Plaintiffs under this Agreement to effectuate its terms.  The Named Plaintiff and Plaintiffs' Counsel further warrant and represent that they are duly authorized to execute this Agreement on behalf of all Plaintiffs.

10.     **MUTUAL FULL COOPERATION**

Counsel for the Parties agree to and shall use their best efforts to fully cooperate with each other in good faith and to take all actions reasonably necessary to implement the terms of this Agreement.

11.     **CONSTRUCTION**

The Parties agree that the terms and conditions of this Agreement are the result of lengthy and intensive arm's-length negotiations between the Parties, with Plaintiffs represented by Plaintiffs' Counsel, and that this Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of this Agreement.  The Parties request that before declaring any provision of this Agreement invalid, the Court shall first attempt to construe all provisions valid to the fullest extent possible consistent with applicable precedents and the intent expressed in this Agreement.

12.     **MEDIATION OF DISPUTES**

Any dispute that may arise under this Agreement, including any dispute with respect to administration of the settlement benefits to Plaintiffs, shall first be submitted by mutual

agreement of the Parties to Carlos Burruezo for mediation in Orlando, Florida, or to another mediator as may be agreed to by the parties before the dispute is submitted to the Court.

**13.    CAPTIONS AND INTERPRETATIONS**

Section titles or captions contained in this Agreement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any of its provisions.

**14.    INTEGRATION CLAUSE**

This Agreement and the attached Exhibits A–B, which are incorporated fully herein, contain the entire agreement between the Parties relating to the settlement of the Action, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged in this Agreement.  No rights under this Agreement may be waived except in a writing signed by the counsel for the Parties.  This Agreement, including the attached Exhibits A–B, may not be changed, altered, or modified, except in a writing signed by the Parties and approved by the Court.

**15.    BINDING ON ASSIGNS**

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

**16.    COUNTERPARTS & SIGNATURES**

This Agreement may be executed in counterparts, and a Party or counsel has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement.  This Agreement may be executed by facsimile signatures, PDF, or email, which shall be deemed to be originals.

17. **APPLICABLE LAW**

This Agreement shall be governed by and construed in accordance with federal law and the law of the State of North Carolina, to the extent federal law does not apply.

18. **RETENTION OF JURISDICTION**

The Parties intend to request that the Court retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of this Agreement.

**IT IS SO STIPULATED.**

Dated: Aug 4, 2021

PLAINTIFF KENNETH PRIVETTE

By:

Kenneth Privette (Aug 4, 2021 17:30 EDT)

Plaintiff Kenneth Privette, Individually and as Class Representative

Dated: Aug 5, 2021

**ANDERSON ALEXANDER, PLLC**

By:

Clif Alexander
Clif Alexander (Aug 5, 2021 14:40 CDT)

Attorneys for Plaintiffs

Dated: Aug 6, 2021

**MORGAN & MORGAN, P.C.**

By:

C. Ryan Morgan
C. Ryan Morgan (Aug 6, 2021 08:31 EDT)

13

Dated:_____    **ANDERSON ALEXANDER, PLLC**

By: _____

Attorneys for Plaintiffs

Dated:_____    **MORGAN & MORGAN, P.C.**

By: _____

Attorneys for Plaintiffs

Dated:_____    **STOVASH, CASE & TINGLEY, P.A.**

By: _____

Matthew J. Pearce
Attorney for DEFENDANT
WASTE PRO OF NORTH CAROLINA, INC.

**DEFENDANT WASTE PRO OF NORTH CAROLINA, INC.**

Dated: August 3, 2021    By: _____

On behalf of DEFENDANT
WASTE PRO OF NORTH CAROLINA, INC.
Name: Chip Ginglos
Title: Divisional Vice President

13

# EXHIBIT "A"

| Name | Settlement Payment |
|------|-------------------|
| Akers, J. | $2,104.39 |
| Alsbrooks, B. | $2,494.52 |
| Barnette, J. | $805.05 |
| Bass, Leroy | $315.03 |
| Beam, D. | $943.44 |
| Biddle, Brandon | $544.14 |
| Blackman, O. | $3,491.14 |
| Blackwell, T. | $1,301.98 |
| Blocker, T. | $1,326.24 |
| Braham, M. | $4,775.10 |
| Brown, D. | $576.68 |
| Brown, G. | $4,126.36 |
| Brown, J. | $71.60 |
| Bull, M. | $1,736.34 |
| Burks, Rodney | $0.00 |
| Canty, Burgess | $3,379.38 |
| Carter, Ezekiel | $2,606.13 |
| Castaneda, Gerardo | $3,952.16 |
| Clark, Melvin | $4,639.49 |
| Clawson, Thaddius | $973.72 |
| Clement, David | $1,346.03 |
| Collins, Christian | $1,031.00 |
| Collins, Kumar | $3,952.16 |
| Couture, L. | $353.62 |
| Crewell, T. | $1,041.97 |
| Cross, Prentiss | $1,890.16 |
| Crump, G. | $912.24 |
| Dardas, Jonathan | $286.39 |
| Davidson, L. | $3,222.42 |
| Decker, B. | $4,162.06 |
| Dibble, M. | $558.13 |
| Dillon, Diana | $3,436.66 |
| Elder, G. | $1,038.52 |
| Elder, Steven | $2,777.97 |
| Ervin, L. | $4,006.07 |
| Featherstone, Steven | $28.64 |
| Fields, D. | $829.61 |
| Fincher, T. | $373.85 |
| Gaddy, W. | $2,567.18 |
| Garcia, D. | $1,207.34 |
| Garcia, J. | $5,934.03 |
| Gardner, D. | $132.13 |
| Gibbs, D. | $286.39 |
| Glenn, B. | $6,892.54 |

| | |
|---|---|
| Goodwin, A. | $2,990.01 |
| Goodwin, J. | $1,351.18 |
| Griffin, A. | $3,145.88 |
| Griffin, Mitchell | $3,522.58 |
| Hal Grigg | $3,830.11 |
| Hall, Gary | $1,661.05 |
| Harris, H. | $6,469.65 |
| Henderson, Gaston | $286.39 |
| Hernandez, Gary | $2,520.22 |
| Hudgins, B. | $536.53 |
| Hundley, M. | $6,463.38 |
| Hurst, J. | $1,751.82 |
| Huss, Ronald | $343.67 |
| Jackson, J. | $809.34 |
| Jago, J. | $1,667.49 |
| Jenkins, Lewon | $801.89 |
| Jimenez Friedrich, Kengm | $5,899.60 |
| Jones, Jeffery | $2,004.72 |
| Kennedy, J. | $3,170.11 |
| Kennedy, M. | $753.58 |
| Kennedy, T. | $2,457.15 |
| Lampkin, G. | $2,963.81 |
| Leak, William | $1,632.41 |
| Lewis, C. | $1,714.65 |
| Littke, A. | $3,364.28 |
| Marcias (Gonzalez), Robe | $6,615.57 |
| Maxwell, E. | $4,388.15 |
| Mayes, A. | $2,571.28 |
| McClain, E. | $1,891.72 |
| McKenzie, G. | $1,944.63 |
| Millwood, K. | $2,728.24 |
| Mole, C. | $71.60 |
| Montague, L. | $229.11 |
| Moore, M. | $1,992.97 |
| Murphy, T. | $1,950.07 |
| Myers, Dirk | $4,639.49 |
| Nelson, M | $5,295.49 |
| Page, A. | $7,091.68 |
| Presler, E. | $1,366.43 |
| Privette, K. | $1,893.91 |
| Proper, J. | $7,362.19 |
| Pugh, R. | $180.48 |
| Randall, R. | $2,238.39 |
| Ratchford, Dainelle | $1,088.28 |
| Ray, Anthony | $687.33 |

| | |
|---|---|
| Reyes, Alejandro | $2,634.77 |
| Richardson, Matthew | $572.78 |
| Rivera, B | $535.66 |
| Robinson, B | $3,351.45 |
| Robinson, C. | $1,488.45 |
| Robinson, D. | $3,493.94 |
| Roper, D. | $5,270.93 |
| Satterfield, Cha. | $4,481.63 |
| Satterfield, Chr. | $9,305.29 |
| Schramm, S. | $417.80 |
| Sheppard, S. | $2,010.22 |
| Singleton, C. | $3,987.73 |
| Smith, D. | $71.60 |
| Soublet, J. | $1,774.66 |
| Spears, Derrick | $2,119.27 |
| Spencer, A. | $6,966.43 |
| Spruill, Brian | $2,462.94 |
| Stafford, A. | $2,495.95 |
| Stepp, B. | $4,158.60 |
| Stitt, A. | $1,438.15 |
| Streater, F. | $2,038.71 |
| Tennyson, A. | $2,988.98 |
| Thomas, A. | $2,551.42 |
| Wallace Jr., T. | $2,484.21 |
| Wallace, K. | $1,177.26 |
| Webb Jr., E. | $16,291.28 |
| Whitted, T. | $4,430.13 |
| Williams, H. | $1,912.06 |
| Williams, L. | $8,713.78 |
| Winston, J. | $649.36 |
| Woodard, D. | $456.07 |
| | |
| | $309,500.00 |